UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOISES BATRES GUEVARA, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ISCHIA, INC., et al.,**<br><br>Defendants. | **Civil Action No. 13-895 (JDB)** |

## MEMORANDUM OPINION & ORDER

Plaintiffs Moises Batres Guevara and Jose Gabino Batres Guevara ("the Guevaras") bring this action against defendants Ischia, Inc. and Vittorio Testa (doing business as Ristorante La Perla, or "La Perla"), alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. ("FLSA") and the District of Columbia Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 et seq. ("DCMWA"). The Guevaras used to work for Testa—the primary owner, president, and executive chef at La Perla—and allege that they regularly worked uncompensated overtime hours at his restaurant. Before the Court is [19] the Guevaras' motion for partial summary judgment. For the reasons set forth below, the Court will grant in part and deny in part the Guevaras' motion for summary judgment.

## BACKGROUND

Moises Batres Guevara worked at La Perla from October 2010 to May 2011, Pls.' Stmt. of Material Facts Not in Dispute [ECF No. 19-1] ("Pls.' Stmt.") ¶ 7, as a line cook, Dep. of Moises Guevara [ECF No. 19-5] ("M. Guevara Dep.") at 12-15. Jose Gabino Batres Guevara

worked at La Perla from 2007[1] to May 2013, Pls.' Stmt. ¶ 8, primarily as a dishwasher, Dep. of Jose Guevara [ECF No. 19-4] ("J. Guevara Dep.") at 13. Through the duration of their employment, the Guevaras earned a flat weekly salary. Pls.' Stmt. ¶ 9. Jose Guevara started off with a salary of $450 per week, and ultimately earned a raise to $575 per week. Compl. ¶ 21. Moises Guevara began at $300 per week, and by the time he left was earning $425 per week. Id. ¶ 20. Their pay was always calculated on a weekly basis; it did not fluctuate based on the amount of hours actually worked. Pls.' Stmt. ¶ 9. The Guevaras never received any separately designated overtime pay. Id. ¶ 13. In fact, the parties never discussed overtime. See id. ¶ 12.

The Guevaras claim to have regularly worked in excess of forty hours per week, but that they never received any additional overtime pay, in violation of the FLSA and the DCMWA. Jose Guevara also argues that his total compensation was frequently below the District of Columbia's $8.25 minimum wage.[2] Defendants deny these allegations. The Guevaras now move for partial summary judgment on their overtime claims, asserting that there is no genuine dispute of material fact as to liability, or as to their entitlement to liquidated damages under the FLSA and the DCMWA. In other words, the Guevaras seek a trial only on the amount of damages—with any amount found by the jury to be doubled under the FLSA and the DCMWA's liquidated damages provisions. Defendants want a trial on all disputed issues, including liability.

---

[1] Jose Guevara's exact start date is unknown. This ambiguity is irrelevant because the Guevaras seek damages only for the three years preceding the filing of the complaint, presumably to avoid a statute-of-limitations problem. See Compl. [ECF No. 1] ¶ 18.

[2] Jose Guevara does not seek summary judgment on his minimum wage claim, so the Court will not discuss it further—except to note that it appears that there may be a typographical error in this section of the complaint, transposing the name "J. Guevara" where "M. Guevara" was intended. Compare Compl. ¶¶ 68-71, with id. ¶¶ 20, 39.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see also Celotex, 477 U.S. at 323.

In determining whether there is a genuine dispute of material fact sufficient to preclude summary judgment, the Court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). Summary judgment, then, is appropriate if the nonmovant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## DISCUSSION

The area of disagreement between the parties is narrow. Defendants concede that the Guevaras meet the statutory definition of "employees," and that they were subject to the overtime

and minimum wage protections of the FLSA and the DCMWA. See Pls.' Stmt. ¶ 6; see also 29 U.S.C. § 207(a)(1) (requiring payment of an overtime premium "not less than one and one-half times the regular rate" of payment for any hours worked in excess of forty per week). Defendants also concede that the Guevaras never received any separately designated overtime pay, Pls.' Stmt. ¶ 13, and that it is possible that the Guevaras sometimes worked more than forty hours per week, id. ¶ 14. But defendants argue that there is a genuine dispute of material fact as to whether the Guevaras ever worked more than forty hours in any given week, and that this factual dispute precludes summary judgment. The Court agrees. Summary judgment is inappropriate on this lean record; the factual uncertainties at the heart of this case will need to be resolved by a jury.

### I. Liability

The Guevaras move for summary judgment on the issue of liability for their overtime claims under the FLSA and the DCMWA. Due to Testa's failure to dispute the point, the Court will enter partial summary judgment on the narrow issue—predicate to a finding of liability—that both Testa and Ischia, Inc. qualify as "employers" under the FLSA and the DCMWA. The Court will deny the Guevaras' motion for summary judgment on the broader question of liability, however, because, on this record, a reasonable jury could come to more than one conclusion as to whether the Guevaras ever worked uncompensated overtime hours.

#### A. Testa's Status as an "Employer"

Both the FLSA and the DCMWA require "employers" to pay their "employees" an overtime premium for any hours worked in excess of forty hours per week. See 29 U.S.C. § 207(a)(1); D.C. Code § 32-1003(c).[3] There is no dispute that both of the Guevaras qualify as

---

[3] The so-called "fluctuating workweek" method of overtime payment calculation is a legally permissible alternative in some circumstances, as applied to weekly (rather than hourly) salary arrangements. But the parties

4

"employees" under the statutes, see Pls.' Stmt. ¶ 7-8, and that Ischia, Inc. was their "employer," see id. ¶ 6. At least during discovery, however, Testa appeared to dispute whether he, as an individual, also qualified as a statutory "employer," and thus, whether he could also be personally liable along with Ischia, Inc. Thus, the Guevaras move for summary judgment on this issue.

For purposes of individual liability, the word "employer" in the FLSA and the DCMWA is generally interpreted in the same way. See Williams v. WMATA, 472 F.2d 1258, 1261 (D.C. Cir. 1972). At minimum, an individual who exercises operational control over an employee's wages, hours, and terms of employment qualifies as an "employer," and is subject to individual liability. See, e.g., Ventura v. Bebo Foods, Inc., 738 F. Supp. 2d 1, 6 (D.D.C. 2010) (holding restaurant owner individually liable for FLSA overtime violations because "he ha[d] operational control over the corporate defendants," had "a significant ownership interest in the corporate defendants," and had "the power to hire and fire, control work schedules and supervise employees, determine pay rates, and maintain employment records"); see also Thompson v. Linda And A., Inc., 779 F. Supp. 2d 139, 152 (D.D.C. 2011) ("The FLSA's definition of employer is broad enough to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.") (internal quotation marks omitted)

The Guevaras argue that Testa is a statutory "employer," subject to individual liability, because he "was the controlling officer" and "executive chef of Ischia, Inc." during the entirety

---

agree that the employment relationships in this case did not meet the legal requirements for this alternative. See Pls.' Stmt. ¶ 12 (the parties never reached a "clear and mutual understanding" about overtime pay); 29 C.F.R. § 778.114 (requiring, among other things, that "the employee clearly understands" a fluctuating workweek arrangement).

of the Guevaras' employment. See Pls.' Stmt. ¶ 1. And it is not in dispute that "Testa had the power to hire, fire, suspend, and otherwise discipline plaintiffs," that he "supervised Plaintiffs' work duties," and that he "set and determined Plaintiffs' rate and method of pay." Id. ¶¶ 2-5. All of these facts strongly suggest that Testa qualifies as an individual "employer" under the FLSA and the DCMWA.

The Court need not wrestle with this issue any longer, however, because Testa has conceded it by failing to address it in his opposition brief. Although the Guevaras devoted an entire section of their summary judgment motion to this issue, Testa said nothing in response. "It is well established that if a [party] fails to respond to an argument raised in a motion for summary judgment, it is proper to treat that argument as conceded." Wilkins v. Jackson, 750 F. Supp. 2d 160, 162 (D.D.C. 2010) (citing FDIC v. Bender, 127 F.3d 58, 67 (D.C. Cir. 1997)). Accordingly, the Court will enter partial summary judgment in favor of the Guevaras on the issue of Testa's status as an "employer." Hence, any FLSA or DCMWA liability will run against both defendants: Ischia, Inc., and Vittorio Testa.

### B. Uncompensated Overtime

The Court now turns to the central factual dispute in this case: whether the Guevaras ever worked more than forty hours in a week. The Guevaras argue that they did so regularly. Defendants—although conceding it was "possible" that the Guevaras did so on occasion—argue that this is a factual dispute that needs to be resolved by a jury. The Court agrees, and will deny summary judgment on the issue of liability.

In support of the Guevaras' version of events, both plaintiffs testified at their own depositions that they regularly worked more than forty hours per week. See J. Guevara Dep. at 44-48 (testifying that he regularly worked from 9:30 AM to 10:30 PM); M. Guevara Dep. at 7-8,

17-19 (testifying that he worked from early in the morning to "between 10:30 and 11:00" PM); Pls.' Stmt. ¶ 11. And Testa himself conceded that it was possible that the Guevaras worked more than forty hours per week. Rule 30(b)(6) Dep. of V. Testa for Ischia, Inc. ("Testa Dep.") at 56 ("Q: So, is it possible that the Plaintiffs worked more than 40 hours a week? A: Maybe."); Pls.' Stmt. ¶ 14; see also Compl. ¶ 19 (alleging that "Plaintiffs typically and customarily worked about seventy-eight (78) to eighty-two (82) or more hours per week").

On the other hand, in support of Testa's version of events, five employees of La Perla claim that the Guevaras often left work early, and regularly took large "breaks" in the middle of the work day, between the end of the "lunch rush" and the start of dinner preparation. See Vidal España Aff., Ex. 1 to Defs.' Opp'n to Pls.' Mot. for Summ. J. [ECF No. 20] ("Defs.' Opp'n") ("Jose would take his two-hour break every day, and twice a week his break would last three or four hours. Whenever he didn't take a break, he would leave early."); John W. Zastko Aff., Ex. 2 to Defs.' Opp'n ("From roughly 2 PM to 5 PM, the dishwasher station was empty."); Jose Navia Aff., Ex. 3 to Defs.' Opp'n (testifying that both the Guevaras would "leave at around one every day and return at five or six"); Robert D. Asher Aff., Ex. 4 to Defs.' Opp'n (testifying that Jose Guevara took a break "every day" between "2 or 3 PM" and "5:30 or 6 PM"); Heric Quintero Aff., Ex. 5 to Defs.' Opp'n ("Every day, at around one or two, Jose would start his break. He would not return to the restaurant till six in the evening."). Testa offered similar testimony. See Testa Dep. at 56 ("Jose come in the morning, stay two hours, leave at 1:30 and come back at 6 o'clock."). If the Guevaras were not working for large blocks of time in the middle of each day, it is less likely that they worked in excess of forty hours in any given week.

What is missing, unfortunately, is any documentation that might break the stalemate, and allow a reasonably accurate determination of how many hours a week the Guevaras actually

7

worked. Apparently, neither party maintained any documentation. See Pls.' Stmt. ¶ 10. For this, the Guevaras blame Testa. That argument has some force. After all, under the FLSA and its implementing regulations, employers are obligated to record the dates of the workweek, the regular hourly rate, the hours worked each day, the weekly total, the "straight-time" wages paid, and the overtime paid to each employee. See 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(a)(5-9); see also D.C. Code § 32-1008. As a result, some cases suggest that an employer's failure to keep accurate records lightens an FLSA plaintiff's evidentiary burden. See, e.g., Hunter v. Sprint Corp., 453 F. Supp. 2d 44, 52-53 (D.D.C. 2006) ("[W]here the employer's time records are inaccurate or incomplete, . . . [t]he fact that the employee's evidence is merely an approximation is not a bar to recovery."). But even so, a plaintiff must still "prove[] that he has in fact performed work for which he was improperly compensated . . . and produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). At least at the summary judgment stage, the Guevaras have not made such a showing. On this record, then, the Court can draw no "just and reasonable inference" about how often, if ever, and to what extent the Guevaras worked in excess of forty hours per week.[4]

Hence, in light of the conflicting evidence in the record, and the lack of any relevant documentation that might offer confirmation of how many hours the Guevaras actually worked, summary judgment on the issue of liability would be inappropriate. See Vahey v. Gen. Motors Co., 2013 WL 5738601, at *15 (D.D.C. Oct. 23, 2013) ("[R]esolving a credibility dispute

---

[4] Frankly, even a jury may have difficulty coming to an accurate conclusion on this issue, given the complete lack of documentation. But juries making reasonable estimates in the face of uncertainty is par for the course. Judges may not do so at the summary judgment stage—at least not when faced with conflicting testimony.

between competing affiants is not an appropriate task for this Court when deciding a summary judgment motion."). A jury will have to resolve this question.

## II. Liquidated Damages

The Guevaras also seek partial summary judgment on the issue of whether defendants are liable for an additional payment of liquidated (that is, double) damages under the FLSA and the DCMWA. Because the Court is denying summary judgment on liability, it would be premature to grant summary judgment on liquidated damages—there may be no damage award to double. See Hunter, 453 F. Supp. 2d at 62-63 ("[T]he question of [plaintiff's] entitlement to liquidated damages can hardly be resolved at this time, when there has yet to be a determination of liability."). Nevertheless, although this issue will remain open for now, the Court notes that the standard for liquidated damages under the FLSA and the DCMWA is quite plaintiff-friendly, see Thompson, 779 F. Supp. 2d at 153 ("This good faith defense to liquidated damages requires an affirmative showing of a genuine attempt to ascertain what the law requires, not simply the absence of bad faith.") (citing 29 U.S.C. § 260), and defendants' opposition brief does little to refute the Guevaras' arguments on this issue. Indeed, defendants may have conceded the issue by failure to adequately respond to the Guevaras motion for summary judgment. However, no further discussion on this issue is necessary at this stage.[5]

## CONCLUSION

Upon consideration of [19] plaintiffs' motion for partial summary judgment, the parties' memoranda, and the entire record herein, it is hereby

---

[5] In their briefs, the parties also seem to dispute the proper method of calculating compensatory damages, see, e.g., Pls.' Reply [ECF No. 22] at 5, although the Guevaras' initial motion did not seek summary judgment on this issue. In any event, for the same reasons discussed above with respect to liquidated damages, any decision on the issue of calculating damages would be premature at this time.

**ORDERED** that [19] plaintiffs' motion is **GRANTED IN PART** and **DENIED IN PART**; it is further

**ORDERED** that plaintiffs' motion for summary judgment is **GRANTED** on the issue of Vittorio Testa's status as an "employer"; it is further

**ORDERED** that plaintiffs' motion for summary judgment is **DENIED** on the issue of liability; it is further

**ORDERED** that plaintiffs' motion for summary judgment is **DENIED** on the issue of liquidated damages; and it is further

**ORDERED** that a status conference is set for June 27, 2014 at 9:00 a.m. in Courtroom 30A.

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: June 6, 2014